## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Barbara Swaab,

                Plaintiff,      Case No. 20-11199

v.                         Judith E. Levy
                              United States District Judge

Calm.com,

                          Mag. Judge David R. Grand

                Defendant.

_____/

## ORDER GRANTING IN PART, DENYING IN PART
## <u>DEFENDANT'S MOTIONS FOR SANCTIONS [40]</u>

Before the Court is Defendant Calm.com's motion for sanctions, requesting the Court impose sanctions of $18,305.00 on Plaintiff Barbara Swaab as well as her counsel for the filing of, and failure to withdraw, a knowingly frivolous claim unsupported by any law or fact. (ECF No. 40.) Plaintiff and her counsel, attorney Arnold Weintraub of the Weintraub Group, PLC, argue that Defendant's motion for sanctions should be denied as untimely in addition to contending that the motion "is fundamentally defective and sanctionable, itself, for failure to

acknowledge salient facts and law that precludes Defendant's motion."
(ECF No. 43, PageID.514.)

For the reasons set forth below, Defendant's motion for sanctions is granted in part.

## I.   Background

The impetus for Defendant's motion for sanctions stems from Plaintiff's allegations—first contained in Plaintiff's initial complaint filed on May 14, 2020—that Defendant engaged in "trademark bullying." (*See* ECF No. 40, PageID.397; ECF No. 1.) Count VI was labeled "Common Law–Unfair Competition Trademark Bullying" and indicated that Defendant's actions were allegedly in violation of Michigan common law. (ECF No. 1, PageID.10–11.) Alongside its answer (ECF No. 10), Defendant filed a motion to dismiss Counts VI and VII of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 17, 2020. (ECF No. 9.)

In lieu of having a response or hearing on Defendant's initial motion to dismiss Counts VI and VII of the complaint, the parties stipulated to allow Plaintiff to file the first amended complaint. (ECF No. 14.) Of note, the stipulation indicated that Plaintiff would amend Count VI in the first

amended complaint. (*Id.* at PageID.98.) Plaintiff's first amended complaint, filed on August 14, 2020, again included a Count VI titled "Common Law–Unfair Competition Trademark Bullying." (ECF No. 15, PageID.104–109.) The text of Plaintiff's first amended complaint comprising Count VI is stated below:

47. As set forth hereinabove, contrary to the rights of the Plaintiff, Defendant has wrongfully adopted and has wrongfully used and is using at common law the trademark "Take a Deep Breath" in connection with its "relaxation" business. Defendant now asserts and utilizes its economic power and its purported common law trademark usage in an attempt to either evict Plaintiff from or force Plaintiff to turn over her rights in and to her registration and the mark "Take a Deep Breath" and as set forth in its Petition to Cancel, to enable it to fully monopolize the rights in and to this mark in the field of "relaxation."

48. Such action constitutes trademark bullying in its vexatious practice of harassment and intimidation of Plaintiff and her counsel beyond what the law reasonably permits.

49. Plaintiff has been damaged in an amount as yet to be determined.

50. Plaintiff has no adequate remedy at law and, unless Defendant is enjoined from continuing its unauthorized usage of Plaintiff's mark, "Take a Deep Breath" in connection with relaxation products and/or services, it will continue to cause Plaintiff to suffer substantial irreparable harm.

51. Plaintiff has no adequate remedy at law and, unless Defendant is enjoined from continuing its usage of Plaintiff's mark, "Take a Deep Breath" in connection with mobile relaxation

applications, it will continue to injure and damage the reputation of the mark owned by Plaintiff.

(ECF No. 15, PageID.108–109.) In sum, the only distinction between the initial and first amended complaints was a change from reference to trademark bullying as a cause of action stemming from Michigan common law (ECF No. 1, PageID.11) to the following: "Such action constitutes trademark bullying in its vexatious practice of harassment and intimidation of Plaintiff and her counsel beyond what the law reasonably permits." (ECF No. 15, PageID.108.) There was no citation to any legal authority for this claim; rather, the language of the new allegations appears to have been adopted from an online article appended to a filing that discussed the concept of trademark bullying as defined in a United States Patent and Trademark Office ("USPTO") Report to Congress on trademark litigation tactics. (*See* ECF No. 19, PageID.187–190.)

Following an attempt by Defendant's counsel to confer with Weintraub, in which concurrence was not obtained (ECF No. 16, PageID.152), on August 28, 2020, Defendant filed a motion to dismiss Count VI of Plaintiff's first amended complaint again under Federal Rule of Civil Procedure 12(b)(6). (*Id.*) On September 14, 2020, Plaintiff filed a

motion requesting permission to use emails redacted under Federal
Rules of Evidence 408 in her response to Defendant's motion to dismiss
Count VI. (ECF No. 19.) On January 22, 2021, the Court denied this
motion and denied Plaintiff's request for an in-camera review of the
emails. (ECF No. 29.)

Of note, in the weeks leading up to the scheduled hearing on
Defendant's second motion to dismiss Count VI, Defendant's then-
counsel Hayley L. Berlin of Perkins Coie LLP, as well as Richard W.
Hoffmann of Reising, Ethington, PC, withdrew as counsel by stipulation.
(ECF Nos. 21, 31.) Attorneys Zachary C. Kleinsasser and Kelly Pesce of
Greenberg Traurig, LLP, as well as Moheeb H. Murray and Michael R.
Williams[1] of Bush Seyferth, PLLC, entered appearances as new counsel
for Defendant. (ECF Nos. 25–28.)

Furthermore, pursuant to an earlier stipulated order, the Court
allowed Plaintiff ten days after the entry of the order denying Plaintiff's
motion to use emails redacted pursuant to Federal Rule of Evidence 408

---

[1] The Court has since granted a motion permitting Attorney Michael R.
Williams to withdraw as counsel for Defendant follow Williams' departure from
Bush Seyferth, PLLC. (*See* ECF No. 50.)

in which to file a response to Defendant's motion to dismiss Count VI. (ECF No. 20, PageID.195.) Plaintiff failed to file a response.

On February 11, 2021, a hearing was held on Defendant's motion to dismiss Count VI. (ECF Nos. 30, 34.) The Court first questioned Plaintiff's counsel, Weintraub, as to why Weintraub failed to file a response to Defendant's second motion to dismiss Count VI. (ECF No. 34, PageID.246–247.) In reply, Weintraub indicated: "I really cannot answer that. It was probably for a veritable plethora of reasons at the time, that's all I can say to the Court." (*Id.* at PageID.247.) Weintraub later elaborated that he "probably took the perspective that the motion to dismiss was really [Defendant's] reply to [Weintraub's] motion to amend the complaint" (*id.* at PageID.248), notwithstanding the fact that there has never been a motion to amend the complaint filed in this case.

When asked to defend the position that trademark bullying constituted a cause of action under federal law, Weintraub stated that he "did cite some law when [he] filed . . . the motion for leave to amend" (despite the fact that no such motion or related briefing was ever filed) and repeatedly referenced the nonexistent motion in response to the Court's statements that no such motion was filed. (*Id.* at PageID.249–

250.) Furthermore, despite Weintraub's recurring indication that trademark bullying was "a recognized cause of action" under federal common law (*see id.* at PageID.247–249), Weintraub could not identify any precedent in support of this assertion and later admitted he understood when filing the amended complaint that this was a case of first impression and he was "treading into new territory." (*Id.* at PageID.251, 253.) Yet Weintraub also admitted that he had not reviewed the relevant caselaw regarding the making of federal common law. (*Id.* at PageID.251–252.) When the Court recited its own independent research into recent Supreme Court precedent cautioning against federal common lawmaking, Weintraub argued that he believed the trademark bullying claim should nonetheless survive because "from a pragmatic standpoint it would promote settlement." (*Id.* at PageID.253.) The Court expressed that it was not permitted to "make up a claim to facilitate a settlement." (*Id.*)

In response, Defendant's counsel, Kleinsasser, "reserve[d] the right to seek sanctions with respect to what [] happened as to Count [VI] here." (*Id.* at PageID.255.) The Court indicated that it would grant Defendant's second motion to dismiss Count VI and would not issue a written opinion

because "it's not worth it." (*Id.* at PageID.257.) The next day, the Court entered an order granting Defendant's motion to dismiss Count VI for the reasons set forth on the record.[2] (ECF No. 32.)

On May 21, 2021, Defendant filed a motion for sanctions based on Plaintiff's and Weintraub's filing and continued defense of the trademark bullying claim. (ECF No. 40.) On June 4, 2021, Weintraub filed a response (ECF No. 43), to which Defendant replied on June 11, 2021. (ECF No. 45.)

On June 29, 2021, a status conference was held by video conference, at which Defendant's pending motion for sanctions was discussed.[3] (ECF

---

[2] Contrary to Weintraub's assertions in his response to Defendant's motion for sanctions (*see* ECF No. 43, PageID.520), Weintraub did not withdraw the trademark bullying count at this hearing, but rather, the Court granted Defendant's second motion to dismiss the trademark bullying count. (*See* ECF No. 34, PageID.256–257.)

[3] The Court initially indicated at the June 29, 2021 status conference that it would consider scheduling a hearing for oral argument on Defendant's motion for sanctions were the parties to be unable to independently reach an agreement by July 16, 2021. (ECF No. 49, PageID.658.) However, the Court has since determined that because oral argument will not aid the Court's decisional process, the Court will decide the motion based on the parties' briefing without oral argument. *See* E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). Furthermore, "[i]n this circuit, there is no requirement that a full evidentiary hearing be held before imposing sanctions." *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011) (quoting *Wilson–Simmons v. Lake Cnty. Sherif's Dep't*, 207 F.3d 818, 822 (6th Cir. 2000)); *see also KCI USA, Inc. v. Healthcare Essentials, Inc.*, 797 F. App'x 1002, 1007 (6th Cir. 2020) ("[W]hen a

Nos. 46, 49.) The parties were ordered to contact the Court's case manager by close of business on July 16, 2021, to update regarding whether the parties were able to come to an agreement concerning Defendant's motion for sanctions. (ECF No. 49, PageID.661–662; ECF No. 47, PageID.612.) On July 16, 2021, the parties jointly emailed the Court to indicate that they were unable to reach an agreement. E-mail from Arnold Weintraub, Plaintiff's counsel, to William Barkholz, Case Manager to Judge Judith E. Levy (Jul. 16, 2021 11:514 EST) (on file with the Court).

## II.   Analysis

Defendant requests the Court impose a monetary sanction of $18,305.00 and costs against Plaintiff and Weintraub for the filing and refusal to withdraw a claim known to be frivolous and unsupported—the trademark bullying claim. (ECF No. 40.) Specifically, Defendant is seeking only a portion of the total $25,381.00 legal fees incurred by Defendant's predecessor counsel (i.e., Nixon Peabody, LLP; Reising Ethington, P.C.) and Defendant's current counsel (i.e., Greenberg

---

court intends to invoke its inherent authority, "[a]t the very least, responsive briefing . . . [can] provide[ ] the procedural safeguards necessary.").

Traurig, LLP; Bush Seyferth PLLC) for their completion of the following tasks: (1) "meeting and conferring with [Plaintiff's] counsel in advance of filing the motions to dismiss," (2) "researching the grounds in support of both motions to dismiss," (3) "drafting and filing the motions to dismiss," (4) "drafting and filing the opposition to [Plaintiff's] motion to use extrinsic e-mails[,]" (5) "preparing for oral argument on the motion to dismiss," (6) "developing legal strategy with [Defendant's] in-house legal team," and (7) "appearing before the Court for oral argument." (*See id.* at PageID.408–411.) Defendant argues the imposition of sanctions is proper pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent powers. (*Id.* at PageID.403–404.)

The Court finds that sanctions in the amount of $5,989.50 against Weintraub are proper pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.

## A. Sanctions are not proper under Rule 11, but are proper under 28 U.S.C. § 1927 and the Court's inherent powers

Federal Rule of Civil Procedure 11(c) empowers courts to impose sanctions on a party who has violated Rule 11(b) by litigating in a disingenuous way. Rule 11(b) bars a litigant from making submissions to the court "for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Sanctions may also be imposed if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)).

As a preliminary matter, Weintraub alleges that the Court cannot impose sanctions under Rule 11 because Defendant failed to follow the 21-day safe-harbor provision contained in Rule 11(c)(2). (ECF No. 43, PageID.526.) Under the safe-harbor requirement, a party is required to formally serve the sanctions motion on the opposing party and then wait twenty-one days to file the motion with the Court. Fed. R. Civ. P. 11(c)(2); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014). "Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion." *Penn, LLC*, 773 F.3d at 767.

Defendant indicates that Weintraub was served a copy of the motion on April 27, 2021, in light of Rule 11's requirement. (ECF No. 40,

PageID.390.) Accordingly, Defendant properly served the sanctions motion on Weintraub and then waited at least twenty-one days to file the motion with the Court as required under Rule 11(c)(2).

Weintraub does not dispute this. Rather, Weintraub argues that Defendant's request for sanctions was nonetheless untimely because the May 21, 2021 filing of the motion for sanctions (and the related April 27, 2021 service of the motion on Weintraub) occurred months after the trademark bullying claim was dismissed. (ECF No. 43, PageID.520–521.) Referencing the safe-harbor provision's purpose as allowing a party the opportunity to correct behavior before it is sanctioned, Weintraub cites out-of-circuit cases to contend that a motion for sanctions must be filed before the offending contention has been withdrawn or resolved. (*Id*.) Because Weintraub could not have engaged in any corrective action once the trademark bullying claim was dismissed, Weintraub argues that Defendant's attempt to seek monetary sanctions under Rule 11 for conduct occurring before the claim's dismissal is untimely. (*Id*.)

Despite Weintraub's failure to cite in-circuit precedent, Weintraub is nevertheless correct that in the Sixth Circuit, "service and filing [of a motion for sanctions under Rule 11] must occur prior to final judgment

or judicial rejection of the offending contention." *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 446 (6th Cir. 2006) ("Under the revised Rule 11, sanctions under Rule 11 are only appropriate when a party is made aware of the offending document as filed with the court and has an opportunity to withdraw the filing."). The Court disposed of the offending filing (i.e., Count VI of the first amended complaint) by granting Defendant's motion to dismiss on February 12, 2021 (*see* ECF No. 32)—months before Defendant served the motion for sanctions on Weintraub. Compliance with the safe-harbor provision is "an absolute requirement" under Rule 11. *Ridder*, 109 F.3d at 296. Accordingly, because Weintraub did not have sufficient opportunity to withdraw or cure his alleged offense before judicial rejection of the offending contention, "sanctions under Rule 11 are unavailable" to Defendant. *Id.* at 297.

Defendant attempts to counter Weintraub's reliance on the safe-harbor provision by arguing that "much of [Weintraub's] sanctionable behavior occurred *after* the filing of [Defendant's] motions to dismiss," pointing to: (1) Weintraub's failure to oppose Defendant's second motion to dismiss Count VI; (2) Weintraub's refusal to withdraw the trademark

bullying claim; and (3) Weintraub's admission that he had failed to read the relevant precedent on federal common lawmaking and that the claim was filed to promote settlement. (ECF No. 45, PageID.602–603) (emphasis in original.) However, Defendant's contention is erroneous for several reasons. Weintraub's failure to oppose Defendant's second motion to dismiss is outside the confines of Rule 11's sanctionable conduct. *See, e.g.*, *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011) (noting that failing to respond to a motion is "inaction that needlessly delays the entire proceedings" and not applicable under Rule 11).

Additionally, Defendant improperly focuses on the timing of the filing of Defendant's second motion to dismiss, as opposed to the event relevant for determination of the safe-harbor provision: judicial rejection of the offending contention. *See Ridder*, 109 F.3d at 297 ("By virtue of its nature, the 'safe harbor' provision cannot have any effect if the court has already rendered its judgment in the case; it is too late for the offending party to withdraw the challenged claim."). Despite Weintraub's conduct at the hearing on Defendant's second motion to dismiss, Defendant is required to have left "sufficient opportunity for [Weintraub] to choose whether to withdraw or cure the offense voluntarily before the [C]ourt

dispose[d] of the challenged contention" to seek sanctions under Rule 11. *Id*. Defendant did not do so. Accordingly, the Court declines to impose sanctions under Rule 11.

Nevertheless, as Defendant correctly notes (ECF No. 45, PageID.603), failure to follow the safe-harbor provision of Rule 11(c)(2) does not preclude Defendant from seeking sanctions under the Court's inherent powers and 28 U.S.C. § 1927. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991) (finding that § 1927, Rule 11, and a court's inherent power to impose sanctions exist in concert); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d at 446 (finding that the district court abused its discretion in imposing sanctions under Rule 11 when Rule 11 motions were made after the disposition of the case on summary judgment but finding that sanctions were proper under the district court's alternative § 1927 holding); *see also Metz*, 655 F.3d at 491 (noting that inherent power sanctions may be proper even in the situations where Rule 11 applies). "Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period, nor is the motion untimely if made after the final judgment in a case." *Ridder*, 109 F.3d at 297.

"A court may assess attorney's fees under its inherent powers 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' *Chambers*, 501 U.S. at 45–46[ ] (internal quotation marks omitted), or when the conduct is 'tantamount to bad faith,' *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767[](1980)." *Metz*, 655 F.3d at 489. The Court may award attorney fees under the bad faith exception upon finding the following three prongs set forth in *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) are met: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (quoting *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010) (internal quotation marks omitted). "Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose." *Griffin Industries, Inc. v. U.S. E.P.A.*, 640 F.3d 682, 685 (6th Cir. 2011) (quoting *BDT Prods.*, 602 F.3d at 754).

Additionally, Section 1927 provides: "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "We have imposed § 1927 sanctions where 'an attorney objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 458 (6th Cir. 2021) (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (internal quotation marks omitted). "The lawyer need not have 'subjective bad faith' but must act with 'something more than negligence or incompetence.'" *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018) (quoting *Red Carpet Studios*, 465 F.3d at 646); *see also Red Carpet Studios*, 465 F.3d at 646 (noting that the purpose of § 1927 is "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy").

The Court finds that Weintraub is sanctionable under both the Court's inherent powers and § 1927 for excess costs stemming from his

persistent assertion of the meritless trademark bullying claim after the Court's January 22, 2021 order. (ECF No. 29.)

Regarding the Court's ability to sanction pursuant to its inherent powers, all three prongs required to award attorney fees under the bad faith exception are met. *Metz*, 655 F.3d at 489. Weintraub argues that the trademark bullying claim was not meritless, contending that there was a "sound basis" for seeking the creation of a trademark bullying cause of action under federal common law through reference to a 2011 Congressional report and a blog entry. (ECF No. 43, PageID.521, 523.) Weintraub thus offers a post-hoc explanation of why trademark bullying is a cognizable claim that notably was not previously included in any briefing or mentioned at oral argument before the Court. Indeed, the Court is disinclined to view Weintraub's newly-offered assertions as reflective of his subjective intent at earlier stages in this case, considering Weintraub's initial assertions at the hearing on Defendant's second motion to dismiss that trademark bullying was already a recognized federal cause of action and his admissions that he had not reviewed the relevant caselaw regarding the making of federal common law. Yet, the record does not establish that Weintraub advocated *from the filing of the*

*initial complaint* for a trademark bullying claim that he *knew* was wholly without legal merit: There is the possibility that he made a genuine, although weakly supported, attempt to recover under a theory of liability that was of dubious merit but not necessarily known to be meritless from the onset.

However, in addition to the legal basis for a claim, there is also the factual basis underlying it. In Plaintiff's motion requesting permission to use emails redacted under Federal Rules of Evidence 408 in her response to Defendant's motion to dismiss Count VI, Weintraub indicated that submission of redacted emails would "establish the basis and the validity of the [trademark] bullying Count [VI.]" (ECF No. 19, PageID.180.) Under Weintraub's own stated logic, the emails were necessary to provide a factual basis for the trademark bullying claim as conceived. However, on January 22, 2021, the Court denied this motion. (ECF No. 29.) Weintraub should have known at this point that under his own reasoning he had no factual predicate for the trademark bullying claim, necessitating its dismissal. *See BDT Prods.*, 602 F.3d at 753 n. 6 ("[A]ttorneys have a responsibility to halt litigation *whenever* they realize that they are pursuing a meritless suit.") (emphasis in original).

Accordingly, even if Weintraub believed there was a plausible legal basis supporting the creation of a trademark bullying cause of action under federal common law, Weintraub's self-proclaimed inability to demonstrate any factual basis for the trademark bullying claim should have prompted Weintraub to voluntarily withdraw the claim or file a response stating the motion was unopposed.

Weintraub is correct that pursuing a meritless action, alone, is insufficient grounds for sanctions under the Court's inherent powers. (ECF No. 43, PageID.525.) "[I]n order for a court to find bad faith sufficient for imposing sanctions under its inherent powers, the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prods.*, 602 F.3d at 753 (emphasis in original). There is something more here. At the hearing on Defendant's second motion to dismiss, Weintraub indicated that the trademark bullying claim should survive despite the lack of any identifiable legal argument in which to do so because "from a pragmatic standpoint it would promote settlement." (ECF No. 34, PageID.253.) Courts have previously found that pursuing a lawsuit only to force a settlement may qualify as improper conduct subject to

sanctions under the Court's inherent powers. *See Parrish v. Bennett*, No. 3:20-CV-275, 2020 WL 7641185, at *4 (M.D. Tenn. Dec. 23, 2020) (citing cases).

Weintraub now argues that this remark was an "improvident gratuitous statement" (ECF No. 43, PageID.521), but this flies in the face of the inference to be drawn from Weintraub's other conduct following the Court's January 22, 2021 order: (1) his failure to file an opposition (or acquiescence) to Defendant's second motion to dismiss and inability to explain why when questioned; (2) his contradictory assertions that trademark bullying was both a recognized and novel cause of action; and (3) his inability to articulate any caselaw in support of the trademark bullying claim at the hearing. "A court imposing sanctions under its inherent powers may consider the nature and timing of the actions that led to a finding of bad faith in determining whether to impose sanctions on conduct from that point forward, or instead to infer that the party's bad faith extended back in time, perhaps even prior to the filing of the action." *BDT Prods.*, 602 F.3d at 754 n. 6. Furthermore, "delaying or disrupting litigation . . . will support a finding of bad faith or improper purpose." *Griffin Industries, Inc.*, 640 F.3d at 685; *see also Red Carpet*

*Studios*, 465 F.3d at 647 (upholding sanctions under the court's inherent powers and § 1927 where the attorney's "actions were taken, at the very least, in the face of an obvious risk that he was increasing the work on the other party without advancing the litigation"). Accordingly, the Court will infer from Weintraub's conduct at the hearing that he continued to pursue the trademark bullying claim after the Court's January 22, 2021 order in bad faith, to improperly force a settlement on the claim or with the intent to delay litigation.

For similar reasons, Weintraub's conduct after the Court's January 22, 2021 order is also sanctionable under § 1927. Weintraub violated his duty to the Court and the adverse parties to withdraw the trademark bullying claim when he ascertained that they were meritless as a matter of fact, causing additional expense for Defendant. *See Larry E. Parrish*, 989 F.3d at 458. The failure to withdraw the trademark bullying claim after the Court's January 22, 2021 order—whether by a response filed to Defendant's second motion to dismiss or at the very least by admission at the related hearing—was conduct that amounted to unreasonable and vexatious multiplication of the proceedings. *See* 28 U.S.C. § 1927. Having found that Weintraub did so in bad faith, the Court may similarly find

that Weintraub did so with "something more than negligence or incompetence." *Carter*, 905 F.3d at 968. Again, Weintraub's "actions were taken, at the very least, in the face of an obvious risk that he was increasing the work on the other party without advancing the litigation[.]" *Red Carpet Studios*, 465 F.3d at 647.

Furthermore, to the extent Weintraub asserts that his conduct did not actually increase the cost of litigation to Defendant because "Hoffman [sic] filed essentially the same motion twice," this conclusion is undoubtedly without merit. (ECF No. 43, PageID.524.) Weintraub's contention blatantly ignores the costs necessary for Defendant's counsel to prepare for the hearing on Defendant's second motion to dismiss, costs which would have been easily avoided were Weintraub to have voluntarily dismissed the trademark bullying claim. Weintraub thus clearly "cause[d] additional expense to the opposing party[,] as required for sanctions under § 1927. *Larry E. Parrish.*, 989 F.3d at 458. Accordingly, the Court will impose sanctions on Weintraub under the Court's inherent powers as well as § 1927.

"[A] federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees . . . is limited

to the fees the innocent party incurred solely because of the misconduct." *In re Bavelis*, 743 F. App'x 670, 675 (6th Cir. 2018) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, —— U.S. —— (2017)). While "[t]he complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct[,]" courts have "considerable room" to "exercise discretion and judgment" when making this "but for" determination. *Id*. at 676 (quoting *Goodyear Tire*, 137 S. Ct. at 1187). Defendant is thus eligible to recover fees and costs related to their preparation for the hearing on Defendant's second motion to dismiss that occurred after the Court's January 22, 2021 order.

## B. Evaluation of Defendant's Documentation and Fees

Having concluded that sanctions are appropriate in this case, it is necessary to consider whether the fee calculation offered by Defendant's current and former counsel is reasonable.[4]

---

[4] Plaintiff's counsel does not attempt to rebut the reasonableness of the fees requested by Defendant beyond a mere statement that "it begs credulity that Mr. Hoffman [sic] expended $25,000.00 in attorney time in preparing and filing the two Motions to Dismiss, especially where the second Motion was virtually identical to the first Motion." (ECF No. 43, PageID.526.) Defendant seeks $18,305.00, not $25,000.00, and does so for work other than that conducted by Hoffmann (i.e., Defendant is seeking fees for one associate at Nixon Peabody, LLP and one partner at Greenberg Traurig, LLP, despite multiple additional attorneys having engaged in this work).

With reference to their itemized summaries, Defendant documents fees and costs of $25,381.00, and ask for an award of $18,305.00, for fees and costs incurred since the filing of Plaintiff's initial complaint. (ECF No. 40, PageID.408–411.) However, in light of the evaluation of Weintraub's conduct, a portion of Defendant's documented hours must be excluded. For the relevant time period in which the Court is awarding sanctions (i.e., after the January 22, 2021 order), Defendant's supportive documentation indicates that after January 22, 2021, Defendant's current counsel, shareholder Attorney Kleinsasser, billed 12.1 hours at a rate of $495.00 per hour (totaling $5,989.50 in fees) preparing for oral argument on the second motion to dismiss, developing legal strategy with Defendant's in-house legal team, and appearing before the Court for oral argument. (*See* ECF No. 40, PageID.410–411; ECF No. 40-2, PageID.415–416, 435–451.)

After reviewing counsel's records, the Court determines that this amount is reasonable. Defendant does not seek to recover for all fees and costs associated with the legal services provided by all counsel following

---

Furthermore, as set forth above, the Court is not awarding sanctions for conduct prior to January 22, 2021—including Defendant's filing of the two motions to dismiss.

January 22, 2021 (e.g., not seeking to recover local counsel's fees). The rate sought for Kleinsasser is below his actual billing rate. (ECF No. 40-2, PageID.415.) Based on Kleinsasser's 16 years of experience in complex civil litigation in both state and federal courts (ECF No. 40-2, PageID.414), as well as the complexity of the case requiring discussion of the possible expansion of federal common law in the trademark realm, a billing rate "near or at the top of the market for legal representation" is well justified. *B&G Mining, Inc. v. Director, Office of Workers' Compensation Programs*, 522 F.3d 657, 665 (6th Cir. 2008); *see also id.* ("By looking . . . to the level of experience, an adjudicator could reasonably conclude that a more experienced attorney would command a higher market rate than a less seasoned one, ceteris paribus.").

Additionally, the Sixth Circuit has approved of using the Michigan Bar Survey as a reliable indicator of prevailing market rates for attorneys practicing within Michigan. *See, e.g., Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020). The State Bar of Michigan, in its latest "Economics of Law Practice" report, recently determined that the median hourly rate for equity partner/shareholder attorneys in Michigan is $330.00, the mean is $349.00, the 75th percentile is $425.00, and the

95th percentile is $620.00. 2020 ECONOMICS OF LAW PRACTICE, ATTORNEY INCOME AND BILLING RATE SUMMARY REPORT, State Bar of Michigan, p. 4. Similarly, for a private practitioner with 16 to 25 years in practice, the mean hourly rate is $315.00, the 75th percentile is $367.00, and the 95th percentile is $546.00. *Id*.

These fees also comport with the traditional "lodestar" method for determining attorneys' fees, which courts calculate "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Where the party seeking attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be [a] reasonable fee." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 551–52 (6th Cir. 2008). Here, using the 95th percentile of $620.00 as the prevailing market rate in light of Kleinsasser's experience and the complexity of the case, this results in a "lodestar" for the legal services provided by Kleinsasser (12.1 hours) totaling $7,502.00.

Under § 1927, "[a] sanctioned attorney is . . . required to personally satisfy the excess costs attributable to his misconduct." *Red Carpet Studios*, 465 F.3d at 646. Accordingly, the total reasonable amount of fees

and costs owed to Defendant by Weintraub is $5,989.50—presumed reasonable in light of the lodestar calculation of $7,502.00.

## III. Conclusion

For the reasons set forth above, Defendant's motion for sanctions is GRANTED IN PART. Weintraub is ordered to compensate Defendant's reasonable attorney fees and expenses of $5,989.50 resulting from the sanctionable conduct set forth above.

IT IS SO ORDERED.

Dated: February 24, 2022         s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 24, 2022.

                               s/William Barkholz
                               WILLIAM BARKHOLZ
                               Case Manager